IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Cortland Nesbitt,<br><br>                Plaintiff,<br><br>v.<br><br>City of Greenville; Kenneth Miller, *in his individual capacity as the former chief of police for the City of Greenville*; Edward Irick, *in his individual capacity as a police officer for the City of Greenville*; Ryan Weeks, *in his individual capacity as a police officer for the City of Greenville*,<br><br>                Defendants. | Case No. 6:22-cv-02867-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on motions for summary judgment filed by Defendants Edward Irick ("Lieutenant Irick") and Ryan Weeks ("Officer Weeks") [Doc. 50] and by Kenneth Miller ("Chief Miller") and the City of Greenville [Doc. 52]. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kevin F. McDonald for pre-trial proceedings.

On July 3, 2024, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the motions for summary judgment be granted. [Doc. 68.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.* at 25.] Plaintiff filed objections on July 24, 2024 [Doc. 71], and Defendants filed replies on July 31, 2024, and August 7, 2024 [Docs. 72; 73].

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## **BACKGROUND**

Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.[1]

In the early morning hours of August 27, 2019, Terri Lindsay Styles, with whom Plaintiff had recently become acquainted, was giving Plaintiff a ride from downtown Greenville, South Carolina, when Plaintiff threw up on the side of her vehicle. [Doc. 52-2 at 2–3 (46:21–47:13), 10–11 (54:15–25, 58:5–12).] Plaintiff testified that Styles became agitated with him, prompting him to exit her vehicle and begin walking home, at which point another vehicle containing four men pulled up next to Plaintiff and Styles. [*Id.* at 11

---

[1] The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information necessary to address Plaintiff's objections.

2

(58:14–23); Docs. 50-6 at 2; 50-8 at 5.] One of the men, Charles Thacker, got out of his vehicle to drive Styles home in her car, stopping first at a convenience store to pick up cigarillos, and Plaintiff rode with the remaining three men (Zedemiah James, Sylas Fadler, and Brandon Hall) to Styles' apartment. [Docs. 52-2 at 11–12 (58:21–23, 61:7–25); 50-6 at 2; 50-8 at 5.] Plaintiff testified that Styles told them to go ahead into the apartment and that they entered after realizing it was unlocked. [Doc. 52-2 at 12–13 (61:22–62:10).] Plaintiff testified that he was intoxicated at that point, but next remembered James, Fadler, and Hall saying that they were going outside to get cigarettes. [*Id*. at 14 (63:15–18).] Plaintiff then noticed some commotion outside that he assumed could be the police, so he closed the door and locked himself in Styles' apartment. [*Id*. at 14–16 (63:23–65:2), 20 (69:20–23).] Plaintiff testified that he then went to sleep and his next memory was of a police K9 dragging him out of bed. [*Id*. at 16 (65:15–17), 21 (70:19–24).]

At approximately 3:00 am on August 27, 2019, the City of Greenville Police Department ("GPD") received a call from one of Styles' neighbors, Meghan Adams, who reported a burglary in progress at Styles' apartment. [Docs. 50-2 at 4–5; 52-3 at 3–4.] Adams reported to the GPD that four men entered Styles' apartment, all of whom wore black bandanas covering their faces and at least two of whom appeared to carry handguns. [Docs. 50-2 at 5; 50-3 at 2.] Adams' statement was corroborated by a friend who was with her. [*See* Doc. 50-10 at 2.]

Additional GPD officers arrived on scene, and body camera footage shows that James, Fadler, and Hall exited the apartment, unarmed, while Plaintiff remained inside the apartment despite officer commands and could be seen looking out of a window. [Docs. 52-4 at 4:30–5:00, 5:10–5:36; 50-5 ¶ 5.] Styles subsequently arrived on the scene

3

with Thacker and provided a GPD officer with her version of the events, including that Plaintiff (whom she claimed she did not know) assaulted her, took her phone, and robbed her. [Doc. 52-4 at 8:40–35:42.] Styles told the officer that she had had only one drink that night, but the officer stated that she did not believe her. [*Id*. at 24:24–24:48.] Styles subsequently informed the officer that she did know Plaintiff from Snapchat and that he likely did not have a gun, but she maintained that he had never been to her apartment and that no one should be in her apartment. [*Id*. at 30:40–32:52; Doc. 68 at 5; *see* Doc. 52-4 at 8:40–35:42 (Styles consistently stating that no one should be in her apartment).]

Other GPD officers continued to arrive, with Lieutenant Irick, and later Chief Miller, assuming command. [Docs. 50-5 ¶ 9; 50-13 at 26–27 (25:5–26:8).] Over a PA system, the GPD repeatedly ordered Plaintiff to leave the apartment, and there is conflicting evidence regarding whether Plaintiff was again seen pacing back and forth in front of a window. [Doc. 52-5 at 2 (34:13–17); *compare* Doc. 50-2 at 5 *with* Doc. 55-3 at 4.] A Special Weapons and Tactics ("SWAT") team was eventually activated, and Officer James Miller with the GPD sought and obtained a search warrant.[2] [Doc. 50-13 at 29 (28:1–6).] Once SWAT arrived and after approximately four hours of no response from Plaintiff, SWAT decided to breach the door to Styles' apartment. [Docs. 50-13 at 34 (33:17–22), 39–40 (38:23–39:1); 52-5 at 4 (37:12–18).] Officer Weeks, a GPD K9 Officer and SWAT team member, was called to assist and upon arrival began discussing the circumstances with other officers to determine whether probable cause existed to arrest Plaintiff. [Doc. 50-17 at 12–13 (11:17–12:20), 17–18 (16:7–17:11).] Although made

---

[2] The relevant portions of the search warrant are provided in the Report. [Doc. 68 at 7–8; *see also* Doc. 50-15.]

aware of conflicting versions of events, Officer Weeks ultimately learned that an unknown subject had barricaded himself in Styles' apartment without permission, the subject was under arrest for burglary in the first degree, a search warrant had been obtained permitting entry into the apartment, and the subject had failed to respond to multiple callouts by the police.  [Docs. 50-17 at 14 (13:3–10); 50-16 at 5–6.]

After confirming that there was probable cause to arrest Plaintiff for burglary in the first degree, Officer Weeks and the SWAT team, including a K9 named Leo, breached the apartment.  [Doc. 50-16 at 6.]  Officer Weeks testified that as soon as they forced open the door, the officers noticed a large object barricading the door and Officer Weeks began giving warnings notifying Plaintiff of the imminent release of a police K9.  [*Id.*; Doc. 50-17 at 20–21 (19:21–20:20); *see also* Doc. 52-6 at 51:45–53:00.]  When the officers did not receive a response from Plaintiff, they released Leo to search the apartment, and he eventually bit and extracted Plaintiff from the bed.  [Doc. 50-16 at 7.]  Officer Weeks' body camera footage shows that Leo was latched on to Plaintiff for approximately 40 seconds total.  [Doc. 52-6 at 53:20–54:24.]

On August 26, 2022, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 against the City of Greenville, Lieutenant Irick, Officer Weeks, and Chief Miller,[3] alleging excessive force and unlawful arrest and imprisonment in violation of the Fourth Amendment against all Defendants and a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of Greenville.  [Doc. 1 ¶¶ 59–76.]

---

[3] Defendants Irick, Weeks, and Miller will collectively be referred to as the "Individual Defendants."

Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs. [*Id*. at 14–15.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. Further, qualified immunity is "an immunity

7

from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The first concerns whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a federal right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second "asks whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Smith*, 781 F.3d at 100. For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

District court judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id*. at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

8

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity.").

## DISCUSSION

**The Magistrate Judge's Recommendations**

The Magistrate Judge recommends granting summary judgment to Defendants on Plaintiff's claims. [Doc. 68.]

Plaintiff submits five objections to the Report:[4] (1) the Magistrate Judge failed to consider the facts in a light most favorable to Plaintiff; (2) genuine disputes of material fact exist regarding whether the Individual Defendants lacked probable cause to arrest Plaintiff; (3) the Magistrate Judge improperly disregarded omissions in the search warrant affidavit that are materially relevant to whether the Individual Defendants had probable cause to arrest Plaintiff; (4) the Individual Defendants' actions in using a K9 constituted excessive force; and (5) Plaintiff has a viable *Monell* claim against the City of Greenville. [Doc. 71.]

For reasons that the Court will explain, the Court overrules Plaintiff's objections and accepts the Report's recommendations.

---

[4] The Magistrate Judge recommends that Plaintiff's independent claims against the City of Greenville for unlawful arrest and imprisonment and excessive force be dismissed, as a municipality may be liable under § 1983 only for an official policy or custom causing constitutional injury. [*Id*. at 22–23.] Plaintiff does not appear to object to this recommendation. [*See* Doc. 71 at 10.] Having reviewed the Report, the record in this case, and the applicable law, the Court finds no clear error. Thus, the Court accepts the Report with respect to the recommendation that Plaintiff's independent claims for unlawful arrest and imprisonment and excessive force against the City of Greenville be dismissed and incorporates that portion of the Report by reference.

**The Magistrate Judge's Adherence to the Summary Judgment Standard**

As an initial matter, Plaintiff argues that the Report does not view the facts in the light most favorable to Plaintiff and instead "wholly defers to the narrative propounded by Defendants as to all events that occurred after law enforcement arrived" on the premises. [Doc. 71 at 2–4.] As his only example, Plaintiff contends that the Report describes James, Falder, and Hall exiting the apartment "following verbal commands," but that Plaintiff testified in his deposition that the men left the apartment to retrieve cigarettes from the car, which is consistent with the body camera footage. [*Id*. at 3 (cleaned up).] Plaintiff then broadly argues that "[t]his inaccurate factual deference to Defendants continues throughout the Report" and that the Report should be rejected in its entirety based on this misapplication of the summary judgment standard. [*Id*. at 3–4.] The Court disagrees.

As noted, when ruling on a motion for summary judgment, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *Diebold, Inc.*, 369 U.S. at 655. Here, the Magistrate Judge appropriately recounted Plaintiff's version of the narrative, including that James, Falder, and Hall left the apartment to retrieve cigarettes. [*See* Doc. 68 at 3.] It appears from the Report that the quote selected by Plaintiff in his objections regarding the men's exit "following verbal commands" is included as part of the officer's point of view, and the Magistrate Judge does not purport to "defer" to Defendants on this specific fact.[5] [*See id*. at 3–4 ("The initial responding officers from the GPD reported . . . .").] Regardless, the other men's

---

[5] In fact, the Magistrate Judge recognized in his analysis that the evidence gleaned from the men's departure from the apartment weighs against a finding of probable cause. [*See* Doc. 68 at 17 ("Although there is evidence that . . . the other men in the apartment were unarmed and unaware of any guns, the totality of the evidence clearly warrants the belief of a reasonable officer that the plaintiff had committed or was committing an offense.").]

10

motivation in leaving the apartment is not material to whether Defendants had probable cause to arrest Plaintiff, and the Court overrules this objection.

**Plaintiff's Unlawful Arrest and Imprisonment Claim**

The Magistrate Judge recommends that summary judgment be granted to the Individual Defendants on Plaintiff's unlawful arrest and imprisonment claim because they had probable cause to arrest Plaintiff and are therefore entitled to qualified immunity. [Doc. 68 at 15–19.]

Section 1983 claims premised on false arrest or false imprisonment are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment. *See, e.g.*, *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. When bringing a claim that a warrantless arrest constituted an unconstitutional seizure, a plaintiff must show that officers arrested him without probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002). "Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior." *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (internal quotation marks omitted).

"Whether probable cause [to believe that a criminal offense has been or is being committed] exists depends upon the reasonable conclusion to be drawn from the facts

11

known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152; *see also Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) ("[P]robable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense (internal quotation marks omitted)."). The analysis "turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). "To prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [ ]he was violating the [law]." *Brown*, 278 F.3d at 368.

The Magistrate Judge concluded that the Individual Defendants are entitled to qualified immunity on Plaintiff's unlawful arrest and imprisonment claim because no reasonable jury could conclude that Defendants lacked probable cause to arrest Plaintiff for burglary in the first degree. [Doc. 68 at 17.] In South Carolina, "[a] person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and . . . the entering or remaining occurs in the nighttime." S.C. Code Ann. § 16-11-311(A). It is undisputed that although the Individual Defendants obtained a search warrant, they did not have a warrant for Plaintiff's arrest. Thus, Plaintiff must show that the Individual Defendants arrested him without probable cause.

In his objections, Plaintiff first argues that the Report does not consider the entirety of the circumstances known to the Individual Defendants at the time of the arrest and

disregards genuine disputes of material fact. [Doc. 71 at 4–6.] Specifically, Plaintiff contends that the Report defers to the Individual Defendants' finding of probable cause—"based exclusively on the initial emergency call and the interviews with the neighbors who made the call"—without considering other facts that were available to the Individual Defendants at the time of the arrest, such as the fact that the other three men did not have weapons on them, Styles informed the officers that Plaintiff was unlikely to have a weapon, and Styles later admitted she was at least somewhat familiar with the men at her apartment. [*Id*. at 5.]

To begin, the Court disagrees with Plaintiff that the Individual Defendants' finding of probable cause was "based exclusively" on the emergency call from Styles' neighbor. As the Magistrate Judge noted, the following information was available to the Individual Defendants at the time of Plaintiff's arrest:

> [T]wo independent witnesses reported a burglary in progress in [Styles'] apartment by men with masks and guns; [Plaintiff] entered [Styles'] apartment at nighttime; [Plaintiff] did not exit the apartment after approximately four hours of officer commands to do so and instead locked and barricaded the door; [Plaintiff] was seen at least at one point pacing throughout the apartment; [Styles] told officers that [Plaintiff] had assaulted and robbed her that evening; and [Styles] told officers on multiple occasions that [Plaintiff] did not have permission to be inside of her apartment.

[Doc. 68 at 17.] Indeed, Officer Weeks confirmed multiple times with various members of the GPD that there was probable cause for burglary in the first degree before entering the apartment. [*See* Doc. 50-17 at 17–18 (16:18–18:11); *see also* Doc. 50-16 at 5–6.] Further, in the Report's analysis of this issue, the Magistrate Judge explicitly considered the facts mentioned in Plaintiff's objections but ultimately concluded that the *totality* of the evidence warranted probable cause. [Doc. 68 at 17 ("Although there is evidence that . .

13

. [Styles] stated that she was almost positive that [Plaintiff] did not have a gun, and the other men in the apartment were unarmed and unaware of any guns, the totality of the evidence clearly warrants the belief of a reasonable officer that [Plaintiff] had committed or was committing an offense.")]; *see Jones*, 952 F.3d at 158 ("Probable cause is not a high bar, and it must be assessed objectively based on a totality of the circumstances, including common-sense conclusions about human behavior."). The Court agrees with the Magistrate Judge and overrules Plaintiff's objection.

Second, Plaintiff argues that the Report dismisses the importance of the omission of certain facts from the search warrant affidavit, and that these omissions are highly relevant to the Court's probable cause inquiry. [Doc. 71 at 6–7.] Plaintiff contends that the omissions are relevant to the probable cause inquiry because Defendants substantially relied on the affidavit and search warrant to justify Plaintiff's arrest and their use of excessive force and because the omissions "reflect . . . Defendants' penchant to play fast and loose with the representations they make before our courts." [*Id*. at 6.]

The Court overrules Plaintiff's objection. The Magistrate Judge specifically considered the omissions in the search warrant affidavit in the Report, concluding that "even when considering the information omitted from the affidavit, the officers had probable cause for [Plaintiff's] arrest." [Doc. 68 at 19.] In other words, even taking into consideration each of the facts Plaintiff contends was omitted from the affidavit, the totality of the evidence establishes probable cause, and the Court agrees with the Magistrate Judge on this point.

14

**Plaintiff's Excessive Force Claim**

The Magistrate Judge also recommends that summary judgment be granted as to Plaintiff's excessive force claim because no reasonable jury could conclude that the Individual Defendants' use of force violated Plaintiff's constitutional rights, and the Individual Defendants are therefore entitled to qualified immunity. [Doc. 68 at 19–22.] The Court agrees.

Claims of excessive use of force during an arrest or other seizure are governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Objective reasonableness" requires "balanci[ng] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks omitted). "[R]easonableness is determined based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005). Accordingly, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Id.* at 481. Ultimately, the question to be decided is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Garner*, 471 U.S. at 8–9.

The *Graham* Court set forth several factors to consider when determining whether an officer's use of force is reasonable, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. "[T]he reasonableness inquiry in an excessive force case is an objective one: the

question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (internal quotation marks omitted). Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

Applying the *Graham* factors,[6] the Magistrate Judge determined that no reasonable jury could conclude that the Individual Defendants' use of Leo violated Plaintiff's constitutional rights for the following reasons: (1) there was probable cause to arrest plaintiff for burglary in the first degree; (2) officers were aware of information reflecting that Plaintiff posed a danger to the officers and others, such as reports that Plaintiff was armed, had robbed and assaulted Styles, refused to exit the apartment after four hours, and had locked and barricaded the door; and (3) Plaintiff was attempting to avoid arrest by refusing to exit the apartment and barricading the door. [Doc. 68 at 21.]

In his objections, Plaintiff generally argues that the Report inappropriately resolves factual disputes in favor of Defendants when recommending that the Court grant

---

[6] The Report refers to these as the "*Garner* factors," referencing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985), on which the factors are based. [Doc. 68 at 20.]

summary judgment to Defendants. [Doc. 71 at 8–10.] Plaintiff argues that several facts undermine the Magistrate Judge's conclusion that the use of Leo was objectively reasonable, including that none of the men who exited the apartment had guns, Plaintiff made no movements inside the apartment for several hours, and Plaintiff remained in the apartment instead of attempting to flee or evade the police. [*Id*. at 9.]

Even taking these facts into consideration, the Court agrees with the Magistrate Judge that the use of Leo was objectively reasonable. As discussed above, the Individual Defendants had probable cause to arrest Plaintiff for burglary in the first degree, and the fact that the other three men—only tangentially associated with Plaintiff—were unarmed does not negate the existence of probable cause. Further, Plaintiff's reliance on evidence that he remained inside the apartment with little to no movement for several hours actually supports the second and third *Graham* factors, as the likelihood of injury to the officers increased when Plaintiff chose to conceal himself in the apartment with a barricaded entry door for multiple hours. *See, e.g.*, *Beatty v. Roberson*, No. 8:11-1238-TMC-KFM, 2012 WL 540795, at *3 (D.S.C. Jan. 11, 2012), *report and recommendation adopted*, No. 8:11-1238-TMC, 2012 WL 530115 (D.S.C. Feb. 17, 2012). Officer Weeks, who deployed Leo, analyzed these factors in his incident report and noted that the facts that Plaintiff concealed himself inside the apartment with a barricaded entry door and his location inside was unknown posed an immediate threat to law enforcement and demonstrated an attempt to avoid a lawful arrest. [*See* Doc. 50-16 at 6.] Moreover, Officer Weeks issued three warnings to Plaintiff that a K9 would be released and that he would get bitten, but Plaintiff continued to resist lawful arrest. [*See* Doc. 52-6 at 51:45–53:00.] Considering all of the information available to the Individual Defendants at the time, the Court

17

concludes that Officer Weeks' decision to deploy Leo upon entering a locked apartment with a barricaded door, in an attempt to apprehend a subject under arrest for burglary in the first degree, and after no response from Plaintiff after three K9 warnings, was objectively reasonable and Plaintiff's objections are overruled. *See Putman v. Harris*, 66 F.4th 181, 187–89 (4th Cir. 2023) (holding that officer's ordering seizure via dog bite did not violate the plaintiff's constitutional rights when the officer had probable cause for a mental health seizure and a reasonable belief that the plaintiff was armed and the plaintiff refused to allow officers to take him into custody).

**Plaintiff's *Monell* Claim**

Finally, the Magistrate Judge recommends that summary judgment be granted to the City of Greenville on Plaintiff's *Monell* claim because Plaintiff has failed to show that a reasonable jury could find a predicate constitutional violation. [Doc. 68 at 22–23.] Under *Monell*, municipalities qualify as "persons" under § 1983, making them amenable to suit. 436 U.S. at 690. That said, a municipality is liable only "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014). Because the Magistrate Judge concluded that the Individual Defendants did not violate Plaintiff's constitutional rights, the Report recommends that Plaintiff's *Monell* claim against the City of Greenville likewise be dismissed.

Plaintiff's objection to this recommendation merely states that "the Report wrongly concludes that [Plaintiff] has no viable § 1983 claims against the [Individual Defendants]" and because the Court should reject the Report's recommendations on the constitutional violations, it "should further reject the Report's recommendation on [Plaintiff's] *Monell*

claim." [Doc. 71 at 10.] Because the Court accepts the Report's recommendation that the Individual Defendants did not violate Plaintiff's constitutional rights, Plaintiff's objection to the Report's recommendation on his *Monell* claim is overruled.

## CONCLUSION

Based upon the foregoing, the Court accepts the Report and Recommendation of the Magistrate Judge and incorporates it by reference. Accordingly, Defendants' motions for summary judgment [Docs. 50; 52] are GRANTED and Plaintiff's claims are dismissed with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

January 23, 2025
Greenville, South Carolina